MICHAEL A. GURDA, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MICHAEL A. GURDA AND ADELE GURDA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gurda v. Commissioner
Docket Nos. 17481-84; 17482-84.
United States Tax Court
T.C. Memo 1987-394; 1987 Tax Ct. Memo LEXIS 391; 54 T.C.M. (CCH) 104; T.C.M. (RIA) 87394; August 11, 1987. Michael A. Gurda, Jr., pro se in docket No. 17481-84. Michael A. Gurda and Adele Gurda, pro se in docket No. 17482-84. Cheryl J. Choy-Weller, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPNION WILLIAMS, Judge:* The Commissioner determined a deficiency in Federal income tax for petitioner's taxable year ended December 31, 1979 of $ 10,002.86 in docket No. 17481-84, and a deficiency in Federal income tax for petitioners' taxable year ended December 31, 1979 of $ 2,136.06 in docket No. 17482-84. The issues this Court must decide are (1) whether a loan to an electing small business corporation from a related corporation is "indebtedness of the corporation to its shareholders" within the meaning of section 1374(c)(2)(B); [1] and (2) whether the repayment by the electing small business corporation of a shareholder loan resulted in gain to the shareholders. *393 FINDINGS OF FACT The facts of these cases have been fully stipulated and are so found. Petitioner Michael Gurda, Jr. resided at Goshen, New York at the time his petition was filed. Petitioners Michael Gurda and Adele Gurda are husband and wife and resided at Middletown, New York at the time their petition was filed. Michael and Adele Gurda are the parents of Michael Gurda, Jr. Indianapolis Speedway, Inc. ("Speedway") was incorporated on May 31, 1978, and is an electing small business corporation within the meaning of section 1371. Speedway provides recreational facilities for the general public, which include miniature car racing, a batting cage and pinball and video games. Michael Gurda and Michael Gurda, Jr. (The "Gurdas") each owned 25 of the 100 shares, or 25 percent, of the stock of Speedway as of the date it was incorporated. Charles A. Slutsky (now deceased) owned the remaining 50 shares of Speedway's stock. [2]
On August 17, 1978 the Gurdas and Charles A. Slutsky together borrowed a total of $ 325,000.00 *394 from the First National Bank of Highland ("FNB"), evidenced by the execution of two notes each in the amount of $ 125,000.00 and one note in the amount of $ 75,000.00. The notes were due and payable on December 7, 1981. [3] The Gurdas and Charles A. Slutsky in turn loaned the $ 325,000.00 to Speedway, although no note was executed documenting the transaction. Speedway reported the loan as part of its loans from shareholders on its 1979 Federal small business corporation income tax return as of the beginning of its taxable year 1979. [4] Each of the Gurdas' proportionate share of the $ 325,000.00 loan to Speedway was $ 81,250.00, which was properly included in basis of shareholder loans to Speedway. The Gurdas and Charles A. Slutsky were also shareholders of Middletown-Wallkill Improvement Corporation ("Wallkill"), which was incorporated in 1966. Wallkill is in the business of owning, managing *395 and renting real property, and owned and leased to Speedway the real property used by Speedway in its business. The Gurdas each owned 50 shares, or 25 percent, of Wallkill's stock. The remaining 100 shares, or 50 percent, of Wallkill's stock was owned by Charles A. Slutsky. On April 12, 1979 the Highland National Bank of Newburgh (HNB) lent $ 350,000.00 to Wallkill. The loan was secured by the personal guarantees of the Gurdas, Charles A. Slutsky and Charles R. Slutsky, a mortgage of the property owned by Wallkill which it had leased to Speedway, and the assignment of Wallkill's lease to Speedway covering the property. The note executed by Wallkill evidencing the loan calls for 14 annual payments of principal each in the amount of $ 23,333.34, and a fifteenth installment of $ 23,333.24. Payments of principal commenced September 1, 1979. Interest on the unpaid principal is due quarterly on a calendar year basis at a rate that may fluctuate between nine and twelve percent, payment of which commenced July 1, 1979. The loan may be prepaid without penalty or premium. Michael Gurda executed the note to HNB evidencing the loan as president of Wallkill. Bills for the principal and *396 interest payments due on the loan were sent to Charles A. Slutsky, who had negotiated the terms of the loan on behalf of Wallkill. HNB's records show Wallkill as the borrower and primary obligor on its loan. The actual proceeds from the HNB loan were $ 344,208.75, after payment of mortgage tax of $ 3,500.00 and other closing costs of $ 2,291.25. Wallkill in turn loaned the funds it received from the HNB loan to Speedway. Speedway deposited the $ 344,208.75 in its checking account with HNB on April 12, 1979. Speedway then paid FNB $ 335,723.06 to repay the three notes totaling $ 325,000.00 executed by the Gurdas and Charles A. Slutsky, extinguishing both the debt of the Gurdas and Slutsky to FNB and Speedway's debt to the Gurdas and Charles A. Slutsky. On April 12, 1979 the Gurdas, Charles A. and Charles R. Slutsky executed an agreement with Wallkill purporting to characterize (1) Wallkill as their nominee, (2) the HNB loan to Wallkill as a substitute loan for the FNB loan to the Gurdas and Charles A. Slutsky, and (3) the four Speedway shareholders as being solely responsible for the repayment of the mortgage securing Wallkill's obligations on the HNB loan. A note accompanying *397 the agreement, from the Gurdas and Slutskys to Wallkill in the amount of $ 350,000.00, is not executed. The Gurdas and Slutskys also executed an agreement with Speedway pursuant to which Speedway acknowledged receipt of the $ 350,000.00 from Wallkill and purported to agree to repay the bond and mortgage executed by Wallkill to secure the HNB loan. The agreement is accompanied by a note from Speedway to its four shareholders, payable in 15 annual installments each in the amount of $ 23,333.34 plus interest, which is not executed. The agreement and accompanying note are dated April 12, 1979. HNB made the loan to Wallkill with the understanding that it would be loaned to Speedway to repay the notes executed by the Gurdas and Charles A. Slutsky to FNB. In making the loan HNB relied on the security provided by the real estate securing the mortgage, and on the substantial net worth and good community and business reputations of the respective guarantors and did not consider or rely on the creditworthiness of Speedway. Speedway paid HNB the principal and interest due on its loan from Wallkill, pursuant to the terms of Wallkill's note to HNB, and reported the interest paid on the *398 HNB loan as a deduction on its Federal income tax returns. The capital necessary for Speedway's payment to HNB made on November 5, 1979 was advanced by the Gurdas and Charles A. and Charles R. Slutsky. The Gurdas included the amounts advanced by them in their respective bases in Speedway. [5]
Speedway reported the loan from Wallkill as a long-term debt on Schedule L of its Federal small business corporation income tax return for its 1979, 1980 and 1981 taxable years. On its return for its 1982 taxable year, however, Speedway reported the HNB loan as a loan from its shareholders. Wallkill reported the HNB loan on its Federal income tax return for its 1979 taxable year as a liability, and its subsequent loan of the proceeds to Speedway as an asset. OPINION In general, the shareholders of an electing small business corporation are entitled to deduct from gross income their proportionate share of the net operating loss of the corporation, as determined under section 1374. However,, the deduction is limited to the sum of the shareholder's *399 adjusted basis in the stock of the corporation and his adjusted basis in the indebtedness of the corporation to the shareholder. Section 1374(c)(2). [6] The parties agree that Speedway is a small business corporation within the meaning of section 1371 which properly elected pursuant to section 1372 not to be subject to the taxes imposed by Chapter 1 of Subtitle A of the Internal Revenue Code of 1954 for the year at issue. The principal issue in this case is whether the HNB loan to Wallkill, the proceeds of which Wallkill lent to Speedway, represents indebtedness of Speedway to its shareholders. *400 Petitioners argue that the HNB loan was in substance a debt running from Speedway to its shareholders. Petitioners contend that HNB looked to the Gurdas and the Slutskys, who were in form the guarantors, as the primary obligors on its loan, and that the loan from Wallkill was in substance equivalent to the shareholder loan to Speedway the proceeds of which were generated through the shareholders' obligations to FNB. They argue that, therefore, the Gurdas are entitled to treat their proportionate share of the HNB loan as shareholder loans to Speedway. Respondent argues that the Gurdas' and Slutskys' guarantees of the HNB loan to Wallkill, the proceeds of which were loaned to Speedway, do not qualify the loan as indebtedness of Speedway to its shareholders within the meaning of section 1374(c)(2)(B) and that, therefore, petitioners may not include their proportionate shares of the loan in their respective bases in shareholder loans to Speedway. The parties also dispute the effect, for Federal income tax purposes, of refinancing the FNB loan through the loan from Wallkill. Petitioners argue that they received no economic benefit from Speedway's repayment of the FNB loan, and *401 that, therefore, they realized no gain on Speedway's repayment of the FNB loan. Respondent contends that Speedway's repayment of the FNB loan results in capital gain to petitioners to the extent the repayment exceeds their respective adjusted "bases in Speedway." [7]
This Court has consistently held that a shareholder's guaranty of an obligation of a subchapter S corporation does not make the obligation an "indebtedness of the corporation to the shareholder" within the meaning of section 1374(c)(2)(B). , affd. without published opinion ; , affd. . In shareholders of several subchapter S corporations lent their credit reputations so the corporations could borrow funds from commercial lenders. The shareholders guaranteed the loans and recorded the proceeds of the loans on the corporate books as "Loans Payable to Shareholders." We held as follows, : No form *402 of indirect borrowing, be it guaranty, surety, accomodation, * * * or otherwise, gives rise to indebtedness for the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, "liability" may exist, but not debt to the shareholders. [Citations omitted.]
A guarantor may have liability pursuant to state law, but no indebtedness to the shareholder-guarantor is established until the guarantor makes actual payments on the obligation. . Further, the debt of an electing small business corporation to a related corporation is not an indebtedness of the corporation to its common shareholders. Cf. (indebtedness of an electing small business corporation to a partnership is not indebtedness of the corporation to the partners of the partnership); (an electing small business corporation's indebtedness to a trust in which its shareholder is the executrix and sole beneficiary of the trust is not indebtedness to the shareholder). We do not believe that the Gurdas' *403 guaranty of the HNB loan to Wallkill, the funds from which were subsequently loaned by Wallkill to Speedway, represents indebtedness of Speedway to its shareholders within the meaning of section 1374(c)(2)(B). HNB treated its loan as the obligation of Wallkill, not as an obligation of the guarantors. Wallkill reported the HNB loan as a liability of the corporation on its Federal income tax return for its 1979 taxable year. Wallkill reported as an asset to its 1979 return its loan to Speedway of the funds generated by the HNB loan. Similarly, Speedway did not report its loan from Wallkill as indebtedness to its shareholders but instead as a liability to Wallkill in the form of a mortgage or note payable in one year or more. [8] Further, Speedway's shareholders made no payments on the HNB loan; Speedway paid to HNB the principal and interest due on the obligation, and deducted the interest payments it made. When Speedway needed capital to pay the HNB loan, the shareholders contributed it to Speedway, which made the payment on the loan. The parties acted in conformity with the form of the transaction in treating the HNB loan as a loan to Wallkill and a subsequent loan from Wallkill *404 to Speedway. Therefore, the HNB loan guaranteed by Wallkill's shareholders is not indebtedness of Speedway to its shareholders. , affg. ; Petitioners argue, however, that the purported agreements between the Gurdas and Slutskys and Wallkill established the individuals as the primary obligors on the HNB loan. The subsequent loan from Wallkill to Speedway, they contend, served merely to replace the original loan from the Gurdas and Charles A. Slutsky obtained through FNB. Petitioners argue that, therefore, the loan from Wallkill to Speedway was in substance a loan from the four Speedway shareholders, which represents indebtedness of the corporation to its shareholders within the meaning of section 1374(c)(2)(B). We disagree. The record reflects fundamental inconsistencies in the purported documentation of a loan transaction *405 between Speedway's shareholders, Wallkill and Speedway [9] in which Speedway's shareholders purport to be primarily liable on the HNB loan and to be the true lenders to Speedway. Although the April 12, 1979 agreement does provide to the contrary, the record reflects that the funds from the HNB loan went directly to Wallkill and from Wallkill to Speedway, rather than to or through Speedway's shareholders. While not conclusive, the funds' path is inconsistent with petitioners' view of the transaction. Moreover, the funds' path conforms to the Federal income tax reporting positions of Speedway, Wallkill and petitioners for 1979. The notes accompanying the agreements pursuant to which the individuals purported to transfer the funds from Wallkill to Speedway were not executed. Even if these notes had been executed, the individuals' status as guarantors of the loan would not have been changed. Moreover, the unexecuted note from Speedway to the Gurdas and Slutskys is ambiguous, purporting to be a demand note yet calling for 15 annual installments and calling for payment of interest without stating an interest rate. We have ascribed no weight to the unexecuted notes presented by petitioners *406 purporting to create Speedway's indebtedness to them because of these unexplained failures and inconsistencies. Petitioners rely on , for the proposition that a shareholder's guaranty of a corporation's debt represents an equity investment in the corporation which serves to increase the shareholder's basis in the corporation. IN Selfe a shareholder of a small business corporation guaranteed a debt of the corporation which she added to her basis in stock. The shareholder used her own property as security for the corporation's debts. The Court of Appeals reversed the District Court's grant of summary judgment for the United States, ruling that in certain circumstances a guaranty of a corporation's debt by a shareholder may represent an equity investment in the corporation, thus increasing the shareholder's basis in the corporation. The court, in analogizing from a similar rule governing section *407 385 treatment of certain interests in corporations as stock or indebtedness, held that if the shareholder establishes that the lender looks primarily to the shareholder/guarantor for repayment, then the transaction may be viewed in substance as a loan by the shareholder and a subsequent contribution of capital by the shareholder to the corporation. . , does not apply to this case. The Selfe holding is premised on proof that the lender looks primarily to the guarantor/shareholder for repayment of the corporation's debt. In this case HNB, the third-party lender, looks primarily to Wallkill, the borrower, for repayment of the loan. Therefore, the guarantees given by the Gurdas and the Slutskys do not give rise to liability for repqyment of the loan sufficient to establish that Wallkill's subsequent loan of the funds to Speedway represents an equity investment which would increase their basis in their stock in that corporation. [10]
*408 Respondent next contends that the repayment of the FNB loan by Speedway results in capital gain to petitioners in excess of their respective bases in the indebtedness in excess of their respective bases in the indebtedness, arguing that the provisions of section 1232 apply. Section 1232 provides in general that any gain realized on the retirement of a bond or note issued by a corporation, which is a capital asset in the hands of the taxpayer and is held for more than one year, shall be considered gain from the sale or exchange of a capital asset held for more than one year. [11] In this case Speedway's indebtedness to its shareholders is not evidenced by the execution of a note. The debt was an open account. Moreover, the debt was held for less than one year -- from August 17, 1978 to April 12, 1979. Therefore, the provisions of section 1232 do not apply. , affg. . *409 The parties have agreed that if the Court determines that petitioners may not include their proportionate shares of the $ 350,000.00 loan from HNB in their "bases in Speedway," then respondent's determination of their respective "bases in Speedway" is correct. Accordingly, each of the Gurdas realized gain in the amount of $ 15,969.00 from the repayment of the FNB loan by Speedway, as determined by respondent in his notices of deficiency. This amount presumably represents the amount by which the Gurdas' shares of the repayment exceeded their respective adjusted bases in the indebtedness. Respondent has conceded that this gain should be taxed as capital gain. Accordingly, and to reflect the foregoing, Decisions will be entered pursuant to Rule 155. Footnotes
*. By order of the Chief Judge, these cases were reassigned to Judge Williams for decision and opinion. ↩
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. ↩
2. Charles R. Slutsky, the cousin of Charles A. Slutsky, acquired 10 shares, or 10 percent, of Speedway's stock from Charles A. Slutsky on January 2, 1979. ↩
3. These notes were renewed upon maturity. ↩
4. Since the notes were renewed upon maturity, the obligation was still in existence as of the beginning of Speedway's 1979 taxable year. Speedway's 1978 Federal small business corporation income tax return (Form 1120S) is not in the record. ↩
5. The stipulation of the parties is not specific on whether these amounts were added to the basis in stock or the basis in shareholder loans. ↩
6. Section 1374(c)(2) provides in relevant part: (2) Limitation. -- A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of -- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation, (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation). ↩
7. See note 5 supra.↩
8. Speedway similarly reported its debt to Wallkill on its 1980 and 1981 returns as long term debt to a third party. Only on its 1982 return did Speedway report the obligation as a loan from shareholders. ↩
9. The agreement states that the loan from Wallkill to Speedway is to replace a $ 350,000.00 loan from Speedway's shareholders to Speedway, when in fact the original loan was for a total of only $ 325,000.00. ↩
10. It is not clear what benefit petitioners believe they would receive if their stock basis were increased. The question before us turns on their basis, if any, in shareholder loans. ↩
11. Section 1232, repealed for taxable years ending in general after July 18, 1984 by section 42(a)(1) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 556, states in relevant part: SEC. 1232. BONDS AND OTHER EVIDENCES OF INDEBTEDNESS. (a) General Rule. -- For purposes of this subtitle, in the case of bonds, debentures, notes or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or by any government or political subdivision thereof -- (1) Retirement. -- Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954). (2) Sales or Exchange. -- (A) Corporate Bonds Issued After May 27, 1969. -- Except as provided in subparagraph (C), on the sale or exchange of bonds or other evidences of indebtedness issued by a corporation after May 27, 1969, held by the taxpayer more than 1 year, any gain realized shall (except as provided in the following sentence) be considered gain from the sale or exchange of a capital asset held for more than 1 year. ↩